1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STACY LEE TAYLOR, | ) | Civil No. 06-0661 JM (LSP) |
| Petitioner, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | DENYING PETITION FOR WRIT OF |
| VINCENT J. IARIA, Chief, San Diego | ) | HABEAS CORPUS |
| County Probation, | ) | |
| Respondent. | ) | |

Stacy L. Taylor (hereinafter "Petitioner"), a probationer represented by counsel, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, to which Respondent has filed an Answer. Petitioner filed a Traverse to Respondent's Answer. The Court, having reviewed Petitioner's Petition, Respondent's Answer, Petitioner's Traverse, and the documents lodged therewith, finds that Petitioner is not entitled to the relief requested and recommends that the Petition for Writ of Habeas Corpus be DENIED.

**I.**

**FACTUAL HISTORY**

The recitation of facts that follows is distilled largely from Respondent's Memorandum of Points and Authorities in Support of Answer to Petition for Writ of Habeas Corpus, which thoroughly summarizes the eyewitness testimony presented to the trial court. *Tinsley v. Borg*, 895 F.2d 520 (9th Cir.

1   1990) (stating that factual findings of state trial courts are entitled to presumption of correctness on

2   federal habeas corpus review).  This recitation contains cites to the original trial court transcript.

3         On January 16, 2004, Officer Shockley was on duty in his capacity as a CHP officer, driving a

4   marked black-and-white CHP patrol car, with a forward-facing red light, a light bar, a siren, and a CHP

5   emblem on the side.  (Lodgment 1 at 75-76).  At approximately 8:20 a.m. Officer Shockley noted a

6   white Volvo, driven by Petitioner, traveling westbound on San Dieguito Road at 61 mph (as measured

7   by Officer Shockley's radar gun).  The posted speed limit on this portion of the road is 45 miles per

8   hour.  (Lodgment 1 at 77-79).  As a result of this transgression, Officer Shockley used his lights and

9   siren to pull over the speeding Volvo.  In response, Petitioner pulled onto Circa del Norte, the main

10  entrance of Fairbanks Ranch.  Officer Shockley stopped directly behind Petitioner.  (Lodgment 1 at 79-

11  80).

12        Officer Shockley approached Petitioner's vehicle on the passenger side, informed Petitioner that

13  he had stopped her because she was traveling at 61 miles per hour in a 45 mile per hour zone, and

14  requested her driver's license, registration, and proof of insurance.  Petitioner claimed she sped due to

15  her tardiness in taking her child to school, and was now having difficulty locating her proof of

16  insurance.  In response to Petitioner's time constraint, Officer Shockley offered to immediately start

17  writing the citation, instructing Petitioner to continue looking for the proof of insurance in the

18  meantime.  (Lodgment 1 at 80-83).

19        After Officer Shockley completed the citation for speeding and no proof of insurance, he

20  returned to Petitioner's Volvo and returned Petitioner's driver's license and registration.  Officer

21  Shockley then requested Petitioner's signature on the citation.  According to Officer Shockley, at this

22  point Petitioner snatched the ticket book out of his hand, threw it on the floorboard, and announced "I

23  don't have time for this, I'm getting my kid to school."  (Lodgment 1 at 83, 99).[1]  Petitioner then put the

24  Volvo in drive, and initiated a three point turn, screeching her tires in the process.  Officer Shockley

25

26  _____

27        [1] Petitioner refutes this version of the facts and instead claims that after Officer Shockley handed her the ticket
    book, she placed it on the seat and continued searching for her proof of insurance.  When Officer Shockley then said "it was
    okay, that people can't find their certificates," Petitioner responded "if we're done, I'd like to get my son to school, okay?"
28  When Petitioner did not hear a response, she took it as permission to leave and did so, not realizing that the ticket book was
    still on her car seat.  (Lodgment 1 at 417-24).

1  jumped back to avoid injury and yelled at Petitioner to stop.  Petitioner, however, did not stop.

2  (Lodgment 1 at 84-86).

3          Officer Shockley returned to his patrol car, turned on his lights and siren, and pursued Petitioner.

4  Petitioner, however, ignored these cues to stop, just as she had ignored Officer Shockley's verbal

5  commands.  (Lodgment 1 at 85-86).

6          Petitioner proceeded westbound onto San Dieguito Road with Officer Shockley in pursuit.  The

7  cars head of Petitioner became aware of Officer Shockley's lights and siren, and yielded the right of way

8  to Officer Shockley.   Petitioner was thus unobstructed and continued her flight.  At the intersection of

9  El Apajo and San Dieguito, a good Samaritan maneuvered his Toyota 4-Runner so as to "box in" the

10  fleeing Volvo.  Undaunted, Petitioner responded by attempting to drive into oncoming traffic and

11  around the 4-Runner, without signaling.  The 4-Runner responded to these evasive maneuvers by pulling

12  directly in front Petitioner.  Petitioner then reversed and, without signaling, attempted to again

13  circumvent the persistent obstacle.  The driver of the 4-Runner responded in kind, and reversed his

14  vehicle to once more stymie Petitioner's evasive movement.  At this point, concerned that Petitioner's

15  vehicle would strike the 4-Runner, Officer Shockley engaged his loudspeaker and requested that the 4-

16  Runner move out of the way.  The driver of the 4-Runner obeyed the officer's commands and moved his

17  vehicle from Petitioner's path.  Petitioner then continued her flight.  (Lodgment 1 at 87-91).

18          Even though the cars in front of Petitioner had given way to Officer Shockley's lights and siren,

19  even though Petitioner had had her progress halted by the 4-Runner's persistent attempts to block her

20  path, and even though Petitioner benefitted when Officer Shockley (over his loudspeaker) commanded

21  the driver of the 4-Runner to move from her path, Petitioner claims that she was still, at this point,

22  unaware of Officer Shockley's pursuit (in spite of his lights and siren).  (Lodgment 1 at 436-37).

23          As a result, Petitioner continued fleeing Officer Shockley's patrol car, traveling westbound on

24  San Dieguito Road.  According to Officer Shockley, traffic was heavy and cars again yielded to his

25  lights and siren.  When Petitioner arrived at the intersection of San Dieguito Road and Rancho Digueno

26  Road, she stopped for a red light.  (Lodgment 1 at 90-91).  Petitioner claims that it was only after this

27  stop that she heard Officer Shockley's siren.  Petitioner then realized that she had his ticket book.

28  (Lodgment 1 at 436-37).  At the intersection, Officer Shockley exited his patrol car and approached

3

1   Petitioner's vehicle, yelling at Petitioner to shut off her ignition.[2]   In response, Petitioner threw Officer

2   Shockley's ticket book from the window, stated that instead of stopping, she was opting to take her son

3   to school, and continued westbound on San Dieguito Road at 55 mph.  (Lodgment 1 at 91-91).

4          Officer Shockley got back in his patrol car and continued his pursuit.  At the intersection of San

5   Dieguito and El Camino Real, Petitioner turned left and headed eastbound.  At this point, CHP Officer

6   Darren Sanchez joined the pursuit on his police motorcycle, with his lights and siren engaged.

7   Petitioner continued to ignore both officers and traveled east on El Camino Real, turning right at its

8   intersection with Hartfield.  There was a stop sign at the intersection, but Petitioner did not come to a

9   complete stop.  Petitioner also failed to signal prior to turning - even though she was navigating a

10  residential area spotted with pedestrians, joggers, and vehicle traffic.  (Lodgment 1 at 96, 107-08, and

11  280).

12         Petitioner continued southbound on Hartfield until its intersection with Tyneborne.  At this

13  intersection, Petitioner slowed to 15 to 20 miles per hour, but continued through the intersection without

14  stopping for the stop sign - even though Del Mar Pines School and Torrey Pines High School were

15  nearby.  (Lodgment 1 at 108-109).  Petitioner then drove on Hartfield until Hartfield's intersection with

16  Torrington.  Officer Shockley noted that at this intersection pedestrian traffic was heavy.  People were

17  on the sidewalk or crossing the street.  Vehicle traffic was also heavy.  Officer Shockley estimated that

18  Petitioner drove 35 miles per hour through this intersection and continued at this speed past Del Mar

19  Pines School, even though the speed limit had changed from 30 mph to 25 mph.  Officer Shockley felt

20  that driving at 35 miles per hour was unsafe given the heavy pedestrian and vehicle traffic.  (Lodgment

21  1 at 109-110).

22         Petitioner finally came to a stop in front of Del Mar Pines School.  Officer Shockley maneuvered

23  his vehicle so as to block her car, parked, approached Petitioner's vehicle, and requested that she turn

24  off the ignition.   (Lodgment 1 at 110).  Petitioner ignored this request, so Officer Shockley reached

25  inside the vehicle, put the vehicle in park, turned off the ignition and removed the keys.  (Lodgment 1 at

26  110-11).

27

28         [2]  Petitioner claims that at this point, Officer Shockley was "continually yelling and physically tried to pull her out of her car," and as a result, Petitioner was unable to apologize for the "mixup."  (Petition for Writ of Habeas Corpus at 4).

1   Officer Shockley then placed Petitioner under arrest, but Petitioner refused to exit the vehicle. In

2   response, Officer Shockley reached into the car and physically removed Petitioner's fingers from the

3   steering wheel. He then placed Petitioner in a control hold and pulled her from the vehicle. (Lodgment

4   1 at 112-13).

5   Petitioner remained uncooperative, but with assistance from Officer Sanchez, Officer Shockley

6   was able to handcuff Petitioner and place her in his patrol car. Officer Shockley read Petitioner her

7   *Miranda* rights, which she claimed to understand. When asked why she did not stop, Petitioner said she

8   just wanted to get her child to school in a timely fashion. Petitioner admitted to hearing Officer

9   Shockley's siren but claimed that she never looked behind her vehicle and thus, never saw his flashing

10  lights. Petitioner stated that throughout the pursuit, she only looked in the direction she was traveling.

11  According to Officer Shockley. Petitioner never said she was frightened and never asked for another

12  supervisor.[3]  Officer Shockley's pursuit covered five to six miles. (Lodgment 1 at 119-22).

13

14  **II.**

15  **PROCEDURAL HISTORY**

16  On January 21, 2004, the District Attorney of San Diego filed a four-count misdemeanor

17  complaint against Petitioner charging her with (1) evading a peace officer with reckless driving in

18  violation of California Vehicle Code § 2800.2(a), a misdemeanor pursuant to California Penal Code §

19  17(b)(4), (2) child endangerment in violation of California Penal Code § 273a(b), (3) resisting, delaying,

20  or obstructing a peace officer in violation of California Penal Code § 148(a)(1), and (4) failure to

21  provide evidence of financial responsibility in violation of California Vehicle Code § 16028 (a).

22  On September 14, 2004, a jury trial commenced.

23  On September 24, 2004, the jury returned guilty verdicts for Petitioner's violations of California

24  Vehicle Code § 2800.2(a), California Penal Code § 273a(b), and California Penal Code § 148(a)(1).

25  On November 16, 2004 Petitioner filed a Motion for a New Trial. On November 17, 2004, the

26  District Attorney filed an Opposition to Petitioner's Motion for a New Trial. On November 22, 2004,

27

28   [3]  Petitioner, however, claims that "an enraged, yelling Shockley violently pulled her from the vehicle and cuffed her." Petitioner states that she asked him to "calm down." (Petition for Writ of Habeas Corpus at 4).

5

the trial judge denied Petitioner's Motion for a New Trial, and ordered that Petitioner's sentence for her conviction under California Vehicle Code § 2800.2(a) be suspended.  The trial judge sentenced Petitioner to four years of summary probation, staying Petitioner's 180 days of custody pending successful completion of the probation.  The trial judge also ordered that Petitioner's sentence stemming from her violation of California Penal Code §§ 273a(b) and 148(a)(1) be stayed pursuant to California Penal Code § 654.

Petitioner appealed her convictions to the California Court of Appeal.  On June 17, 2005, the Court of Appeal unanimously affirmed the judgment of the trial court.

On June 28, 2005, Petitioner filed a Petition for Rehearing or Application for Certification to the Court of Appeal.  On July 29, 2005,  this Petition was denied.

On July 22, 2005, Petitioner filed a Petition for Transfer with the Court of Appeals.  On July 29, 2005, this Petition was denied.

On August 30, 2005, Petitioner filed a Petition for Writ of Habeas Corpus in the California Supreme Court.  On November 2, 2005, this Petition was denied.

On March 24, 2006, Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 with this Court.

On June 12, 2006, the District Attorney filed an Answer and a Memorandum in Support of Answer to Petition for Writ of Habeas Corpus

On July 6, 2006, Petitioner filed a Traverse to the Answer to the Petition for Habeas Corpus.

### III.

### **STANDARD OF REVIEW**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in *violation of the Constitution or laws or treaties of the United States.*

28 U.S.C. § 2254(a) (West 1994) (emphasis added).

6

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to habeas corpus petitions filed after 1996. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The current petition was filed on March 24, 2006, and is governed by the AEDPA. As amended, 28 U.S.C. §2254 (d) now reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:
>
> > (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West Supp. 2003) (emphasis added).

To obtain federal habeas relief, Petitioner must satisfy either §2254(d)(1) or §2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). A state court's decision may be found to be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Id.* at 405-06; *Lockyer v. Andrade*, 538 U.S. 63, 72-75 (2003). A state court decision involves an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or, "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 539 U.S. at 407; *Andrade*, 538 U.S. at 76. These two concepts overlap and it is sometimes necessary to test a petitioner's allegations against both standards. *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000), overruled on other grounds, *Lockyer v. Andrade*, 538 U.S. at 75-76.

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary

1   to, or an unreasonable application of, clearly established Supreme Court law.  *See Delgado v. Lewis*, 223

2   F.3d 976, 982 (9th Cir. 2000) (overruled in part by *Andrade*, 538 U.S. at 74-77).

3        A federal habeas corpus petition must allege a deprivation of one or more federal rights to

4   present a cognizable claim pursuant to § 2254.  A state's interpretation of its laws or rules provides no

5   basis for federal habeas corpus relief because no federal constitutional question arises.  *Estelle v.*

6   *McGuire*, 502 U.S. 62, 68 (1991) (federal habeas corpus relief does not lie for errors of state law, and

7   federal courts may not reexamine state court determinations on state law issues).

8        "[A] federal habeas court may not issue the writ simply because the court concludes in its

9   independent judgment that the relevant state-court decision applied clearly established federal law

10  erroneously or incorrectly. . . Rather, that application must be objectively unreasonable."  *Andrade*, 538

11  U.S. at 76 (internal quotation marks and citations omitted).  Clearly established federal law "refers to the

12  holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions."  *Williams*, 529 U.S.

13  at 412; *Andrade*, 538 123 U.S 71-72.

14       As amended, § 2254(e)(1) provides:  "[A] determination of a factual issue made by a State court

15  shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  Petitioners have "the burden of rebutting the

16  presumption of correctness by clear and convincing evidence."  *Id.*

17       Petitioner has claimed that her constitutional Due Process rights were violated.  Thus, this

18  federal court may only grant habeas relief where the state court arrived at a decision with regard to

19  Petitioner's claims that was *contrary to*, or involved an *unreasonable application of*, clearly established

20  federal law.

21                                      **IV.**

22                                 **Discussion**

23  **A.  Failure To Charge a Violation of California Vehicle Code § 2800.2(b) and Its Constituent Parts
    Did Not Deny Petitioner Her Constitutional Right to Due Process Under the Fourteenth**

24  **Amendment**

25  (a) California Vehicle Code §2800.2

26       Petitioner argues that it was constitutional error for the prosecution's initial complaint to merely

27  charge her with violating California Vehicle Code § 2800.2(a) which states, in pertinent part, that "if a

28  person flees or attempts to elude a pursuing peace officer...and the pursued vehicle is driven in a willful

                                      8

1  or wanton disregard for the safety of persons or property, the person driving the vehicle, upon

2  conviction, shall be punished," since,  according to Petitioner, the prosecution instead  relied on a

3  separate subsection of the California Vehicle Code,  § 2800.2(b),  to establish Petitioner's wantonness.

4  This subsection expressly defines wanton driving as "driving while fleeing or attempting to elude a

5  pursuing police officer during which time three or more violations that are assigned a traffic point count

6  under Section 12810 occur, or damage to property occurs."  Cal Veh. Code § 2800.2(b).  Petitioner

7  contends that in closing, the prosecution argued this "b" section as a possible basis for conviction, and

8  the trial judge instructed the jury that it could convict Petitioner on these grounds.  According to

9  Petitioner, this was a constitutional deprivation, since only § 2800.2(a) was actually charged.  Petitioner

10  cites *People v. Pinkston*, 112 Cal.App 4th 387, 394 (2003) for the notion that since the "b" section is

11  "definitional" it must be clearly and formally charged in order for a jury to convict on the basis of three

12  or more traffic violations.

13          According to Petitioner, failure to formally charge her with a  violation of § 2800.2(b), while

14  actually relying on this section of the Vehicle Code at trial, deprived Petitioner of liberty without due

15  process of law.  As Petitioner alternately contends, § 2800.2(b) either (1) sets forth a separate crime

16  from that described in § 2800.2(a), or (2) expands the crime contained in § 2800.2(a) to such a degree

17  that the failure to mention § 2800.2(b) in the charging documents deprived Petitioner of adequate notice

18  of the actual charges that she would face at trial.  Petitioner argues that she thus could not prepare an

19  adequate defense.

20          Petitioner argues that the notice requirement inherent to the Due Process Clause of the

21  Fourteenth Amendment requires that the complaint failed set forth "*all the elements necessary* to

22  constitute [this possibly separate] offense."  *Hamling v. United States*, 418 U.S. 87, 117-18 (1974),

23  quoting *United States v. Carll*, 105 U.S. 611, 612 (1882) (emphasis added).  Since the complaint did not

24  contain any reference to § 2800.2(b), it clearly failed to meet this minimum standard.  This lack of

25  sufficient notice thus denied petitioner her constitutionally mandated "first essential of due process,"

26  *Connally v. General Const. Co.,* 269 U.S. 385, 391 (1926) as, in Petitioner's words, "not alleging the

27  elements of the offense and then using jury instructions as a basis to provide an alternate route to

28  conviction of a separate crime denies due process of law."  (Petition for Writ of Habeas Corpus at 8-9).

1   As stated in *Cole v. Arkansas*, 333 U.S. 196, 201-02 (1948) (internal citations omitted), "no principle of

2   procedural due process is more clearly established than that notice of the specific charge...It is as much a

3   violation of due process to send an accused to prison following conviction of a charge on which he was

4   never tried as it would be to convict him upon a charge that was never made."

5        Petitioner further contends that this alleged constitutional deprivation was prejudicial.  The

6   prosecution referenced Vehicle Code violations in its closing arguments.  The jury was instructed that it

7   could either convict based upon these violations, under § 2800.2(b) or based upon a finding of general

8   wantonness, under § 2800.2(a).  Petitioner contends that any possibility that the jury convicted

9   Petitioner based on the uncharged § 2800.2(b) offense, as opposed to the charged § 2800.2(a) offense,

10  constitutes sufficient prejudice to invalidate her conviction.

11       Petitioner also argues that since § 2800.2(b) either describes a separate crime or

12  unconstitutionally expands § 2800.2(a), and that since it was prejudicial error not to mention §

13  2800.2(b) in the complaint, both the essential elements contained within § 2800.2(b) and the essential

14  elements incorporated by § 2800.2(b)'s reference to § 12810 of the Vehicle Code, should also have been

15  charged in the complaint.  *Hamling v. United States*, 418 U.S. 87, 117-18 (1974).

16       Respondent argues that the complaint properly provided Petitioner notice of the general offense

17  charged under § 2800.2(a), and that this notice was all that was necessary to guarantee Petitioner due

18  process of law.  Count 1 of the complaint charged that Petitioner "did unlawfully, while operating a

19  motor vehicle and hearing a siren and seeing a lighted red lamp emanating from a distinctly marked

20  vehicle operated by a peace officer, evade, flee and otherwise attempt to drive a vehicle in willful and

21  wanton disregard for the safety of persons and property in violation of VEHICLE CODE SECTION

22  2800.2(a), a misdemeanor pursuant to PENAL CODE SECTION 17(b)(4)."  (Lodgment A at 2).

23       According to Respondent, § 2800.2(b) does not describe a separate, substantive crime from that

24  charged in Count 1 of the misdemeanor complaint.  Respondent further argues that § 2800.2(b) does not

25  expand the substantive crime contained in § 2800.2(a) to such a degree that it should be deemed to

26  contain *essential* elements of the § 2800.2(a) offense (emphasis added).   Instead, Respondent contends

27  that § 2800.2(b) merely provides an *alternative* means of establishing the "willful or wanton disregard

28  for the safety of persons or property" element contained in § 2800.2(a) (emphasis added).  The "b"

1    section is simply a legislative determination that when an individual commits three moving

2    while evading a police officer, they have exhibited sufficiently wanton behavior to satisfy this element

3    of § 2800.2(a).  Respondent argues that  the "b" section merely supplements the "a" section and

4    provides a concrete method of proving wantonness.  An individual violates the statute either when

5    his/her flight exhibits "general" wantonness [§ 2800.2(a)], or when he/she specifically commits three

6    distinct moving violations or damage property while eluding the police officer [§ 2800.2(b)].  As a

7    result, Respondent contends that the Fourteenth Amendment does not mandate that the complaint

8    actually charge a violation of this alternative, "definitional" subsection.  Only § 2800.2(a) actually need

9    be charged as only § 2800.2(a) contains the essential elements of the substantive crime.  The

10   prosecution's failure to charge § 2800.2(b), therefore, did not constitute constitutional error.

11          Respondent further argues that Petitioner waived any of the aforementioned arguments by not

12   objecting appropriately at the trial level.  Respondent states that Petitioner did not demur or otherwise

13   object to the pleading Count 1 of the complaint and, at trial, defense counsel actually conceded the point

14   violations used to prove wantonness or recklessness under § 2800.2(b) need not be charged.

15          Finally, Respondent contends that even if the prosecution's failure to charge § 2800.2(b) in the

16   initial complaint was contrary to, or involved an unreasonable application of, clearly established federal

17   law, this alleged error was harmless.  Respondent notes that a jury can forego the consideration of

18   individual Vehicle Code violations under § 2800.2(b) and instead look to the totality of the conduct in

19   determining if it constitutes "an act or acts intentionally performed with a conscious disregard for the

20   safety of persons or property."  CALJIC No. 12.85 (July 2004 ed.).  In fact, the jury in this case asked

21   whether "Under CALJIC 12.85, in order to prove Vehicle Code section 2800.2 (Reckless Driving)

22   MUST three Vehicle Code violations be proved in order to satisfy [the] criteria OR are #1-8 enough to

23   satisfy [the] criteria?"  (Memorandum of Points and Authorities in Support of Answer to Petition for

24   Writ of Habeas Corpus at 47).  Respondent avers that this jury question indicates that the jury did not

25   limit its deliberation to considering § 2800.2(b).  The jury also looked at the totality of Petitioner's

26   conduct to establish "general" wantonness under § 2800.2(a).  Thus, according to Respondent, even if

27   there was erroneous application of federal law, it did not have a substantial or injurious effect on the

28   jury's verdict.

1    (b)   "Safe Operation of a Motor Vehicle" Element

2           Petitioner argues that since a conviction under § 2800.2(b) requires a finding that the offense

3    involved "the safe operation of a motor vehicle," this element should have been charged by the

4    prosecution and found by the jury beyond a reasonable doubt.  Section 2800.2(b) does not actually

5    contain the phrase "safe operation of a motor vehicle."  Its definition of wantonness instead incorporates

6    California Vehicle Code §12810 by reference.  As stated above, § 2800.2(b) defines wantonness as

7    "driving while fleeing or attempting to elude a pursuing police officer during which time three or more

8    violations that are assigned a traffic point count under Section 12810 occur, or damage to property

9    occurs." Section 12810 assigns one traffic point to any "traffic conviction involving the safe operation

10   of a motor vehicle upon the highway."  Thus, Petitioner argues, the "safe operation of a motor vehicle"

11   element of § 12810 is likewise incorporated in § 2800.2(b), ultimately becoming an "essential element"

12   of § 2800.2(b).

13          Petitioner cites *Apprendi v. New Jersey*, 530 U.S. 466, 477-78 (2000) and its statement that "trial

14   by jury has been understood to require that the truth of every accusation, where preferred in the shape of

15   indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve

16   of the defendant's equals and neighbours...Equally well founded is the companion right to have the jury

17   verdict based on proof beyond a reasonable doubt" to bolster this argument.

18          Petitioner contends that "the safe operation of a motor vehicle" element, essential to a §

19   2800.2(b) conviction, was not charged, nor was the jury explicitly instructed to find this element.

20   (Lodgment 1 at 668-70).  According to Petitioner, the failure to adequately charge and instruct the jury

21   regarding this "safe operation" element created an initial presumption for the jury that the offense did

22   involve the safe operation of a vehicle, without actually charging, and thus, without effectively

23   confronting and addressing this element.   Petitioner contends that this presumption contravenes the

24   principles, guaranteed by the Sixth and Fourteenth Amendments and reiterated in *Apprendi*, that every

25   defendant is entitled to a jury determination, beyond a reasonable doubt, that she is guilty of every

26   element of the crime with which she is charged.  *See also*, *U.S. v. Gaudin*, 515 U.S. 506, 510 (1995).

27   Thus, Petitioner argues that she was deprived her Due Process Rights.

28

1    Petitioner also argues that failure to instruct regarding this element constituted reversible error,

2    as it eased Petitioner's pathway to conviction by eliminating the need for the prosecution to prove an

3    essential element of the crime. *See for e.g.*, *Bartlett v. Alameida*, 366 F.3d 1020, 1024 (9th Cir.

4    2004)(instruction that jury need not find actual knowledge of duty to register as a convicted sex offender

5    as long as adequate notice was given violated due process); *Ho v. Carey*, 332 F.3d 587, 595-96 (9th Cir.

6    2003)(erroneous jury instruction defining second degree, implied malice murder as a general intent

7    crime deprived Petitioner of right to have jury decide every element of the offense).

8    Section 12810 assigns one traffic point to any "traffic *conviction* involving the safe operation of a motor

9    vehicle upon the highway" excepting those listed in subdivision (g).  California Vehicle Code § 12810

10   (emphasis added).  Petitioner contends that § 2800.2(b) also incorporates this essential element by

11   explicitly referencing § 12810.

12    According to Petitioner, § 12810 expressly requires a "conviction" before a traffic point can be

13   assigned.  Petitioner contends that one cannot be convicted of an offense that one has not been charged

14   with violating.  Therefore, Petitioner argues that any use of a § 12810 traffic violation to establish

15   wantonness under § 2800.2(b), first requires an actual conviction of the underlying § 12810 traffic

16   violation.  The § 12810 violation is a factual prerequisite and, as such, must be charged and found by a

17   jury.

18    Petitioner contends that any time the prosecution seeks to employ § 2800.2(b) as the vehicle for

19   a guilty verdict, the prosecution must first charge and prove all of § 12810 point violations that it wishes

20   to use to satisfy § 2800.2(b)'s criteria.  Yet, Petitioner argues, the jury made no such findings in her

21   case.  According to Petitioner, this is contrary to the principle, guaranteed by the Sixth and Fourteenth

22   Amendments and reiterated in *Apprendi*, that every defendant is entitled to a jury determination, beyond

23   a reasonable doubt, that she is guilty of every element of the crime with which she is charge must be

24   charged.  See also *Gaudi*n, 515 U.S. at 510 As a result, Petitioner avers she was denied due process of

25   law.

26    Respondent reiterates that § 2800.2(b) is an alternative, "definitional" section, and as such, does

27   not describe a separate substantive crime from that described in § 2800.2(a) and does not contain

28   *essential* elements of the § 2800.2(a) offense.  Section 2800.2(b), simply supplements § 2800.2(a) and

13

1   contains an alternative means for establishing § 2800.2(a)'s wantonness element.  Respondent repeats

2   that since only § 2800.2(a) contains the essential elements of the substantive crime, only § 2800.2(a)

3   needs to be charged.  Since § 2800.2(b) does not need to be charged, then likewise the "safe operation of

4   a motor vehicle" element of § 12810 - that is arguably incorporated by § 2800.2(b) - also does not need

5   to be charged.

6          Respondent argues that *Apprendi* does not compel a contrary result.  Respondent avers that

7   *Apprendi* holds that "other than the fact of a prior conviction, any fact that increases the penalty for a

8   crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a

9   reasonable doubt."  *Apprendi,* 530 U.S. at 490.  Since the elements of § 2800.2(b) (and § 12810, by

10  incorporation) are not facts "that increases the penalty for the crime beyond the prescribed statutory

11  maximum," they do not fall within the ambit of this holding.  Further, Respondent argues, since

12  § 2800.2(b) does not describe a separate crime, and does not contain *essential* elements of § 2800.2(a),

13  it does not fall within the scope of the Supreme Court's statement in *Apprendi* that a criminal defendant

14  is entitled to "a jury determination that [he] is guilty of every element of the crime with which he is

15  charged, beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 476-77 (internal citations omitted).

16  Essentially, Respondent argues that since § 2800.2(b) itself does not need to be charged, the individual

17  elements contained within § 2800.2(b) and the elements incorporated by § 2800.2(b)'s reference to

18  § 12810, likewise do not need to be charged.   As a result, according to Respondentf the failure to both

19  charge and adequately instruct the jury regarding the elements of § 2800.2(b) did not result in a decision

20  that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

21  determined by the United States Supreme Court.

22         Respondent further argues that a plain reading of § 2800.2(b) leads to the conclusion that

23  Petitioner need not actually be convicted of the underlying Vehicle Code violations encompassed by

24  § 2800.2(b)'s reference to California Vehicle Code § 12810.  Respondent contends that Petitioner's

25  reliance on the "conviction" language contained in § 12810 is misplaced.  According to Respondent,

26  actual underlying "convictions" are required under § 12810 *only* when assigning points to a person's

27  driving record for the purposes of administrative action.  Section 2800.2(b), on the other hand, does not

28  require that any actual administrative action or official "point" assignments occur prior to a finding of

14

1   guilt.  Respondent argues that § 2800.2(b) only requires that the jury find that three or more § 12810

2   "point-worthy" violations occurred during the pursuit - it does not require actual convictions for each

3   violation.

4          Respondent additionally argues that the Legislature, by referencing § 12810 in § 2800.2(b),

5   merely provides the prosecution and the jury a "place to look" for potential violations that could

6   constitute a "willful or wanton disregard for the safety of persons or property."  It is not a separate

7   requirement that the driver of the fleeing vehicle first be convicted of at least three Vehicle Code "point"

8   violations.  Thus, Respondent contends that failure to charge the underlying convictions and failure to

9   instruct the jury that it was required to actually convict Petitioner of the underlying Vehicle Code

10  violations, did not result in a decision that was contrary to, or involved an unreasonable application of,

11  clearly established federal law, as determined by the United States Supreme Court.

12         Petitioner's arguments regarding the failure to charge § 2800.2(b) and its constituent elements,

13  including those elements that it arguably incorporates by referencing § 12810, are essentially two basic

14  assertions.  Petitioner alternately contends that § 2800.2(b) either (1) expands the crime contained in §

15  2800.2(a) to such a degree that the failure to mention § 2800.2(b) in the charging documents surprised

16  Petitioner, unconstitutionally depriving her of adequate notice of the actual charges that she would face

17  at trial and handicapping her defense, or (2) sets forth a separate crime from that described in §

18  2800.2(a), and as such, the essential elements of the separate crime contained in § 2800.2(b) should have

19  been charged.  These arguments will be addressed separately below.

20

21  **1.  § 2800.2(b) does not expand the crime contained in § 2800.2(a) to such a degree that the failure
22  to mention § 2800.2(b) in the charging documents unconstitutionally surprised Petitioner.**

23         Division exists among the courts regarding precisely what "due process" requires of charging

24  documents propounded pursuant to state statutory schemes that address the exact same underlying

25  incident, but list alternative means of commission.  According to LAFAVE, ISRAEL, AND KING, *Criminal*

26  *Procedure Treatise* (2d ed. 1999), § 19.5(b), when this alternative means is amended, at trial, to the

27  original charges "[m]any courts view such [an amendment]...as merely shifting the facts [or the

28  interpretation of the facts] that will be relied upon to establish the same basic element of crime [which

15

1    happens to be broken down by the statute into alternatives rather than stated in general terms that would

2    encompass those alternatives]," and thus allow the subsequent amendment of the charging documents.

3    The Supreme Court, however, has yet to provide an authoritative determination as to whether these

4    alternative, "definitional"sections merely shift the facts used to establish a the same element of the crime

5    or, instead, constitute an entirely separate offense.  Likewise, while *Pinkston*, 112 Cal.App. 4th at 394,

6    states that the state legislature intended § 2800.2(b) to be "definitional," it does not actually speak to the

7    whether or not these alternative means of commissions need to be charged, contrary to Petitioner's

8    assertions.

9         Without actually citing *Stirone v. United States*, 361 U.S. 212 (1960), Petitioner contends that

10   the prosecution's use of § 2800.2(b) in its closing arguments, coupled with the trial judge's instruction

11   to the jury that they could use three traffic violations to establish wantonness - without previously

12   mentioning § 2800.2(b) in the original complaint - constitutes a "constructive amendment" of the type

13   contemplated in *Stirone*.  Petitioner asserts that this constructive amendment to the complaint

14   unconstitutionally broadened the possible basis for conviction from that which was originally charged,

15   and was fundamentally unfair.

16        When definitional, or alternative sections, such as § 2800.2(b), are constructively amended to the

17   original charging document they often contain elements that are a *sufficient* for a conviction. For

18   example, under § 2800.2(b), proof of "three or more violations that are assigned a traffic point count

19   under Section 12810,"  *suffices* to establish the wantonness or recklessness elements proscribed by §

20   2800.2(a).  Yet this method of establishing the § 2800.2(a) is not essential or *necessary* for a conviction.

21   A jury can still find "general" wantonness or recklessness under § 2800.2(a) without making any

22   findings as to traffic violations.  Thus, since § 2800.2(b) merely constitutes a variance of § 2800.2(a)

23   and is not absolutely *necessary* for a conviction. It is not subject to the oft-cited mandate, recognized in

24   *Gaudin*, 515 U.S. at 510, that every defendant should be charged with (and thus, the jury should find)

25   each essential element of the crime with which she is charged.  *see also*, *United States v. Carll*, 105

26   U.S. 611, 612 (1882) (an indictment must "set forth all the elements necessary to constitute the offence

27   intended to be punished") .

28

1    Alternative, or "definitional" sections that contain non-essential elements that merely vary the

2    factual basis for conviction should instead be subject to more lax test of permissible variance enunciated

3    in *Berger v. United States*, 295 U.S. 78 (1935).  Pursuant to *Berger*:

4        The true inquiry...is not whether there has been a variance in proof, but whether there has
         been such a variance as to "affect the substantial rights" of the accused.  The general rule
5        that allegations and proof must correspond is based upon the obvious requirements (1)
         that the accused shall be definitely informed as to the charges against him so that he may
6        be enabled to present his defense and not be taken by surprise by the evidence offered at
         the trial; and (2) that he may be protected against another prosecution for the offense.
7    *Berger*, 295 U.S. at 82.

8    Prong (1) of the *Berger* test is offended when the defendant is compelled "to go to trial with the

9    chief issue undefined" as this leaves "the prosecution free to roam at large - to shift its theory of

10   criminality so as to take advantage of each passing vicissitude of the trial and appeal."  *Russell v. United*

11   *States*, 369 U.S. 749, 766-68 (1962).

12   Contrary to Petitioner's assertions, use of § 2800.2(b) as a possible basis for conviction, after

13   only charging a violation of § 2800.2(a) in the complaint, does not constitute fatal variance under the

14   test enunciated in *Berger*.  The essential elements of § 2800.2(a) include:  (1) driving a vehicle, (2)

15   while attempting to elude a police officer, and (3) while exhibiting  "willful or wanton disregard for the

16   safety of persons or property."  Section 2800.2(b) which expressly defines wanton driving as "driving

17   while fleeing or attempting to elude a pursuing police officer during which time three or more violations

18   that are assigned a traffic point count under Section 12810 occur, or damage to property occurs" does

19   not broaden the basis for conviction under § 2800.2(a). It merely provides an alternative, concrete

20   definition of the "wanton" element contained in § 2800.2(a).  It addresses precisely the same conduct,

21   namely "wanton" driving, originally brought to Petitioner's attention through the complaint.

22   Therefore, failure to charge a violation of § 2800.2(b), did not offend the *Berger* test.  Even

23   though both § 2800.2(a) and § 2800.2(b) were used at trial, the prosecution was limited to addressing the

24   same, basic element of wanton driving.  The prosecution did not employ a shifting theory of criminality.

25   Nor was there unconstitutional surprise.  After being charged with violating § 2800.2(a) - and its

26   prohibition on wanton driving - competent defense counsel should certainly have been on notice that the

27   prosecution would focus Petitioner's driving while failing to heed Officer Shockley's lights and siren.

28   Thus, Petitioner received sufficient notice to prepare a defense to her alleged crossing of double yellow

17

1  lines, failure to drive on the correct side of the roadway, unsafe entry onto the highway, and unsafe

2  starts.  (Lodgment 1 at 441-42).  Therefore, the use of the uncharged § 2800.2(b) does not constitute

3  fatal variance under *Berger*, as it does not expand the crime contained in § 2800.2(a) to such a degree

4  that the failure to mention § 2800.2(b) in the charging documents unconstitutionally surprised Petitioner.

5  **2.  § 2800.2(b) does not set forth a separate crime from that described in § 2800.2(a)**

6          Section 2800.2(b) does not stand alone.  It is inextricably tied to § 2800.2(a).  Its definition of

7  "wanton disregard" contains no punitive force without reference to the substantive crime described in §

8  2800.2(a).  It thus merely functions as a "definitional" section, or an alternative means of establishing an

9  essential element contained in § 2800.2(a).

10         The legislative history of § 2800.2(b) supports the notion that § 2800.2(b) is nothing more than a

11  definition of the substantive crime contained in § 2800.2(a).  The Legislative Counsel's Digest, for

12  example, states that "this bill would...describe acts that constitute driving in a willful or wanton

13  disregard for the safety of persons or property."  (Stats. 1996, ch. 420).  Further, one analysis of the

14  amendment states that "[t]his bill would define a 'willful or wanton disregard for the safety of persons or

15  property' as behavior that includes, but is not limited to, driving while fleeing or attempting to elude a

16  pursuing peace officer during which time either three or more violations that are assigned a traffic point

17  violation point count occur or damage to property occurs."  (Sen. Rules Com., Off. Of Sen. Floor

18  Analyses, 3d reading analysis of Sen. Bill No. 1999 (1995-1996 Reg. Sess.) As amended July 7, 1996, p.

19  2) (as cited in *Pinkston*, 112 Cal.App.4th 387)  As Petitioner concedes, *Pinkston* itself declares that §

20  2800.2(b) is a definitional section.  The Supreme Court has acknowledged that such state court

21  determinations are afforded great deference: "If a State's courts have determined that certain statutory

22  alternatives are mere means of committing a single offense...we simply are not at liberty to ignore that

23  determination."  *Schad v. Arizona*, 501 U.S. 624, 636-37 (1991); *see also*, *Mullaney v. Wilbur*, 421 U.S.

24  684, 690-91 (1975) (declining to reexamine the Maine Supreme Judicial Court's decision that, under

25  Maine law, all intentional or criminally reckless killings are aspects of the single crime of felonious

26  homicide).

27         *Schad* involved unanimity instructions.  The Supreme Court held that the Due Process Clause of

28  the Constitution did not prevent the Arizona State Legislature from determining that first degree murder

18

1   and felony murder constituted the same basic offense.  Even though first degree murder and felony

2   murder are comprised of markedly different elements, they are not so disparate morally and culpability-

3   wise that a State cannot deem them the same offense.  *Schad* 501 U.S. at 636-37 .

4         With this precedent in mind, and with the requisite deference to the California state legislature

5   and state courts, this Court likewise finds that § 2800.2(a) and § 2800.2(b) describe the same offense.

6   As California has determined, § 2800.2(b) is merely an alternative means of establishing the "wanton"

7   element of § 2800.2(a).  The two subsections proscribe the same conduct (wanton driving) and, even if

8   § 2800.2(b) addresses different behavioral specifics than § 2800.2(a), the difference between the

9   behavior addressed by each subsection is certainly not as great as the difference between first degree and

10  felony murder in *Schad*.  As a result of this extensive overlap between § 2800.2(a) and § 2800.2(b), this

11  Court likewise finds that the Due Process Clause of the Constitution does not prevent California from

12  determining that § 2800.2(a) and § 2800.2(b) constitute the same offense.  Section 2800.2(b), a

13  "definitional" section, merely provides an alternate means of establishing an element of the overlying

14  offense described in § 2800.2(a).

15        Since § 2800.2(b) does not describe a separate, distinct offense, the allegedly essential elements

16  of § 2800.2(b) do not need to be charged as the statutory section falls outside of  *Carll*'s 105 U.S. at 612

17  mandate that charging documents must "set forth all the elements necessary to constitute the offense

18  intended to be punished."  Further,  *Cole v. Arkansas*, 333 U.S. 196, 201-02 (1948) does not compel a

19  different result.  *Cole* involved a failure to charge a "separate, distinct, and substantially different

20  crime."  *Cole*, 333 U.S. at .  As California has constitutionally determined, § 2800.2(b) is definitional

21  and does not describe a separate or distinct crime.  Section 2800.2(b), like § 2800.2(a), addresses

22  wanton driving while fleeing a police officer. The two sections are not "substantially different."  The

23  issues raised by Petitioner simply do not fall within the ambit of *Cole*.  Therefore, as the same

24  substantive offense (contained in its entirety in § 2800.2(a))  is addressed by the two sections, when §

25  2800.2(a) is charged, the notice requirement inherent to the Fourteenth Amendment does *not* require that

26  § 2800.2(b) and its constituent elements also need to be charged.

27

28

19

**3.  Failure to charge § 2800.2(b) constituted harmless error**

Pursuant to *Neder v. United States*, 527 U.S. 1 (1999), failure to submit an element of the charged offense to the jury is not a structural error, and is therefore subject to harmless error review.

Assuming, *arguendo,* that the Fourteenth Amendment does require § 2800.2(b) and its constituent elements to be charged, failure to do so in the instant case constituted harmless error.  The jury was instructed that it could forego consideration of individual Vehicle Code violations under § 2800.2(b) and instead look to the totality of the conduct in determining if it constitutes "an act or acts intentionally performed with a conscious disregard for the safety of persons or property."  CALJIC No. 12.85 (July 2004 ed.).  In fact, the jury in this case asked whether "Under CALJIC 12.85, in order to prove Vehicle Code section 2800.2 (Reckless Driving) MUST three Vehicle Code violations be proved in order to satisfy [the] criteria OR are #1-8 enough to satisfy [the] criteria?"  (Memorandum of Points and Authorities in Support of Answer to Petition for Writ of Habeas Corpus at 47).  This jury question indicates that the jury did not limit its deliberation to considering § 2800.2(b).

At trial, several witnesses testified as to Petitioner's generally erratic driving.  Therefore, the jury could certainly have instead examined the totality of Petitioner's conduct to establish "general" wantonness under § 2800.2(a) and was not constrained to merely addressing the vehicle code violations contained in § 2800.2(b).  Thus, even if there was erroneous application of federal law, it did not have a substantial or injurious effect on the jury's verdict.

Therefore, it is RECOMMENDED that Petitioner's claim in this regard be DENIED.

**B**.  **Failure to Adequately Instruct the Jury Regarding the "Evading" Element of § 2800.2(b) Did Not Deprive Petitioner of Her Fourteenth Amendment Right to Due Process.**

At trial, Petitioner requested that the jury be instructed that "evading," for the purposes of § 2800.2(a), meant "to elude by dexterity or stratagem," or "to escape the perception, understanding, or grasp of [another]."  (Petition for Writ of Habeas Corpus at 14, *citing* Lodgment 1 at 446-49).  Petitioner argues that she offered this definition to inform the jury that "evasion" does not encompass any failure to stop while being pursued.  Instead, the statute only addresses driving away that is done with the

1    purpose of avoiding detention.  However, the Court refused to give this definition to the jury.

2    (Lodgment 1 at 449).

3          Petitioner contends that the court erred in failing to give this requested jury instruction.

4    According to Petitioner, the meaning of "evade" was "left to the jury's imagination," and this, coupled

5    with the jury instruction that was actually given, "encouraged them to conclude that evading could

6    constitute simply driving away - *even if in doing so petitioner was not trying to escape detention but to*

7    *go to a point of safety to stop*."  (Petition for Writ of Habeas Corpus at 14).  Petitioner argues that this

8    failure to appropriately instruct the jury deprived Petitioner of due process of the law, as the essential

9    element - "evade or elude" - was not constrained to its appropriate statutory meaning. Thus, it allowed

10   the jury to criminalize Petitioner's otherwise innocent behavior.  Petitioner emphasizes and reiterates

11   that she was not fleeing Officer Shockley, she was merely seeking a safe and appropriate place to stop

12   her vehicle.

13         Thus, Petitioner contends that denial of her requested definition also denied Petitioner her due

14   process rights as it "reduced" the burden of proof for the prosecution.  Petitioner argues that the jury's

15   lack of knowledge regarding the alleged restricted meaning of "evade" ultimately and unconstitutionally

16   facilitated her conviction.  *Rose v. Clark*, 478 U.S. 570, 578-79 (1986)(jury instruction that

17   impermissibly shifted burden regarding malice element subject to harmless error test).

18

19         Respondent counters that the trial court's failure to instruct the jury on the definition of "evade"

20   as requested by Petitioner did not violate her constitutional due process rights.  Respondent argues that

21   the denial of the requested jury instruction does not raise a federal question.  Respondent contends that

22   the correctness of a CALJIC instruction under California law is not a federal question, *Estelle v.*

23   *McGuire*. 502 U.S. 62, 71-72 (1991), as any claim that a jury instruction is contrary to state law is not a

24   federal question.  *Mitchell v. Goldsmith*, 878 F.2d 319, 324 (9th Cir. 1989).  According to Respondent, it

25   is not enough to show that a jury instruction was undesirable, erroneous, or condemned; the instruction

26   must actually violate a due process right in order to raise a federal question.  *Cupp v. Naughten*, 414

27   U.S. 141, 146 (1973).

28

Respondent also argues that California law does not require the trial court to give a clarifying instruction, such as the one requested by Petitioner, when "the terms used in the instructions giver are 'commonly understood by those familiar with the English language.'"  *People v. Ritchie*, 28 Cal.App.4th 1347, 1360 (1994) (internal citations omitted).  California Penal Code § 957 flatly states that "the words used in an accusatory pleading are construed in their usual acceptance in common language, except such words and phrases as are defined by law, which are construed according to their legal meaning."  Respondent contends that "evade," as used in the statute, does not have a technical meaning and is not expressly "defined by law."  Respondent argues that it instead has a sufficiently common meaning to be easily understood by English speakers.  As a result, Respondent argues, California law dictates that Petitioner's proposed definition of "evade" did  not need to be provided by the trial court.

Respondent further argues that Petitioner's proposed definition, which includes the somewhat complex words "dexterity" and "stratagem," would actually confuse a jury further, instead of elucidating the issue.  As, pursuant to California law, the trial court has the duty "to refrain from instructing on principles of law which...have the effect of confusing the jury," Respondents contend that the trial court was correct to refuse this proposed definition.  *People v. Saddler*, 24 Cal.3d 671, 681 (1979).

Thus, since Petitioner's claim regarding the definition of "evade" does not raise a federal question and since the proposed definition was correctly refused by the trial court pursuant to California law, Respondents argue that the trial court's decisions did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court.

According to *Cupp*, an undesirable or erroneous jury instruction does not require reversal of an otherwise valid conviction.  The given instruction must actually violate a due process right to warrant reversal.  *Cupp*, 414 U.S. at 146.  In *Cupp,* the jury instruction given arguably undercut the defendant's basic presumption of innocence.  *Id.*  at 144.  Due to this burden shifting, the instruction had been almost unanimously condemned in the federal courts prior to the case.  *Id*. at 146.  Yet the Supreme

22

1  Court held that, in spite of this "substantial unanimity," the offensive jury instruction was not enough to

2  require reversal.  *Id*.  The jury instruction did not violate a due process right.  *Id*.

3      Federal review of state court action "demands appropriate respect for the deliberative judgment

4  of a state in so basic an exercise of its jurisdiction."  *McNabb v. United States*, 318 U.S. 332, 340

5  (1943).  Therefore, this Court will accord deference to the deliberative judgment of the trial court in

6  excluding Petitioner's requested instruction that "evading," for the purposes of § 2800.2(a), meant "to

7  elude by dexterity or stratagem," or "to escape the perception, understanding, or grasp of [another]."

8  (Petition for Writ of Habeas Corpus at 14, *citing* Lodgment 1 at 446-49).  If the egregious burden-

9  shifting instruction that undercut the basic presumption of innocence in *Cupp* did not violate a due

10  process right, then the trial court's determination that violating § 2800.2(a) was not contingent upon

11  proof that Petitioner fled Officer Shockley with a modicum of skill and strategy, likewise certainly did

12  not deprive Petitioner of due process of the law.

13      Therefore, it is RECOMMENDED that Petitioner's claim in this regard be DENIED.

14

15  **C.  Failure to Require the Jury to Unanimously Agree on the Specific Acts that Constitute the Charged Offenses Did Not Deny Petitioner Her Due Process Rights as Guaranteed by the Fourteenth Amendment.**

16

17      Petitioner contends that Schad held that the Due Process Clause of the Fourteenth Amendment

18  mandated that the jury, in certain situations, must unanimously agree on any facts that were "material"

19  or "necessary to constitute the crime."  *Schad*, 501 U.S. at 638.[4]

20      Petitioner argues that the jury was instructed that it could convict under § 2800.2 if it found

21  generic "wanton disregard" [§ 2800.2(a)] or, in the alternative, if it found three uncharged traffic

22  violations [§ 2800.2(b)].  Petitioner does not see § 2800.2(a) and § 2800.2(b) as setting forth alternative

23  means of fulfilling the necessary elements of the same general crime.  Instead, Petitioner contends that

24  the two options to convict described entirely distinct, factual scenarios that each contain material,

25  necessary elements of two separate crimes.  Therefore, Petitioner argues that the jury should have

26

27      [4]Petitioner concedes, however, that the *Schad* opinion also dictates that a jury need *not* agree on facts that merely

28  constitute an "alternative means" of fulfilling the necessary elements of the crime.  *Schad*, 501 U.S. at 632.  According to *Schad*, any such distinctions between necessary, material facts and the alternative facts that suffice to establish these necessary elements "represent value choices more appropriately made in the first instance by a legislature than a court."  *Id.*.

23

received an instruction to unanimously determine the specific conduct that constituted the a violation of § 2800.2.  According to Petitioner, the jury should have made a unanimous determination whether the Petitioner exhibited general wantonness, satisfying the material elements of § 2800.2(a), or committed three traffic offenses, satisfying the separate material elements of the separate crime contained in § 2800.2(b).  As a result, Petitioner argues that she was denied Due Process of Law as guaranteed by the Fourteenth Amendment and as interpreted by *Schad*.

Petitioner also argues that the jury should have received a unanimity instruction prior to determining whether Petitioner violated California Penal Code § 273a(b).  This statute prohibits conduct that "willfully causes or permits that [a] child to be paced in a situation where his or her health may be endangered," which, as Petitioner claims, constitutes criminal negligence, and is defined as "aggravated, reckless or flagrant."

According to Petitioner, the prosecution never identified a specific act that violated § 273a(b), and as a result, the jury was never instructed to determine, with unanimity, precisely which conduct violated § 273a(b).  Further, Petitioner contends that the jury likely used its earlier *non-unanimous* finding that Petitioner exhibited "wanton" or "reckless" behavior while fleeing Officer Schockley, in violation of § 2800.2(a), to fulfill this "criminal negligence" element of the § 273a(b) count.  Petitioner argues that since the jury was not instructed to unanimously agree on the conduct that constituted a § 273a(b) violation (and may, in fact, have relied on its earlier, non-unanimous finding that Petitioner violated § 2800.2(a) to establish this "criminal negligence"), Petitioner was denied her Due Process rights.

Petitioner further argues that the jury should have received a unanimity instruction prior to convicting bases on Petitioner's alleged violation of California Penal Code § 148(a)(1).  This section of the Penal Code states, in pertinent part, that "every person who willfully resists, delays, or obstructs any public officer...in the discharge or attempt to discharge any duty of his or her office or employment...shall be punished..."

Petitioner contends that she had three separate encounters with Officer Shockley.  Her first encounter took place when she was pulled over on a private road near the Fairbanks Ranch entrance at

1   Circa Del Norte and left with Officer Shockley's ticket book still in her car.  Officer Shockley then

2   pursued Petitioner (with lights and siren on), leading to the second encounter at Rancho Digueno Road,

3   when Petitioner stopped for a red light.  Here, the ticket book was thrown from Petitioner's window and

4   Officer Shockley attempted to remove Petitioner from her vehicle.  Petitioner refused to leave the

5   vehicle and again drove away from Officer Shockley.  Officer Shockley again pursued Petitioner (with

6   lights and siren on), leading to the third encounter at Petitioner's child's school.  Here, according to

7   Officer Shockley, Petitioner again refused to leave her vehicle, and Petitioner was subsequently pulled

8   from her vehicle and handcuffed.

9        According to Petitioner, the jury was never instructed to find with unanimity, which of these

10   three allegedly separate incidents supported the § 148(a)(1) conviction.  Petitioner argues that since her

11   conviction may have been based on an non-unanimous finding of fact (a "splintered decision among

12   jurors"), she was denied Due Process of Law.  (Petition for Writ of Habeas Corpus at 23-24).

13        Respondent argues that a unanimity instruction was not required for any of the three charged

14   offenses.  Respondent contends that, under California law, a unanimity instruction is not required if the

15   offense is continuous in nature, *People v. Madden*, 116 Cal.App.3d 212, 215-219 (1981), if the crimes

16   are so closely connected that they form part of one transaction, *People v. Mota*, 115 Cal.App.3d 227,

17   231-34 (1981), or if the defendant offers the same defense to each of the acts and there is no reasonable

18   basis for the jury to distinguish between them, *People v. Stankewitz*, 51 Cal.3d 72, 100 (1990).

19   Respondent further argues that the Supreme Court has held that fundamental due process does not

20   require unanimity in such instances: "A crime may be said to involve a continuing course of conduct

21   because it is committed over a period of time, like kidnapping, harboring a fugitive, or failing to provide

22   support for a minor.  *In such cases, the jury need not agree unanimously on individual acts that occur*

23   *during the ongoing crime*."  *Richardson v. United States*, 526 U.S. 813, 832-33 (1999) (emphasis

24   added).

25        Respondent argues that § 2800.2(a), in stating that "if a person flees or attempts to elude a

26   pursuing peace officer...and the pursued vehicle is driven in a willful or wanton disregard for the safety

27   of persons or property, the person driving the vehicle, upon conviction, shall be punished," proscribes a

28

continuous course of conduct.  According to Respondent, the pursuit was a continuous course of conduct, and the traffic violations committed during this pursuit are all components of this continuing course of conduct, "so closely connected in time that they formed part of one transaction."  (Answer to the Petition for Writ of Habeas Corpus at 54).  As such, the jury was not required to unanimously agree regarding a specific act that constituted "recklessness" under § 2800.2(a), nor was it required to unanimously agree on the three traffic violations that alternatively constituted recklessness.

Likewise, Respondent argues that § 273a(b), which prohibits conduct that "willfully causes or permits that [a] child to be paced in a situation where his or her health may be endangered," describes a continuing course of conduct.  As a result, Respondents contend that the jury need not unanimously agree as to the specific act that constitutes child endangerment.

In a similar fashion, Respondent argues that § 148(a)(1)  describes a continuing course of conduct.  According to Respondent, Petitioner's violation of § 148(a)(1) began when she first drove away from Officer Shockley and continued, without interruption, until she was physically removed from her vehicle in front of her child's school.  Respondent contends that this pursuit did not consist of three separate encounters.  Since it was a continuing course of conduct, Respondent argues that a unanimity instruction was not necessary.

As Respondent correctly illustrates, the Supreme Court has held that when a crime involves a "continuing course of conduct...the jury need not agree unanimously on individual acts that occur during the crime.  In such instances, a unanimity instruction is not required.  *Richardson*, 526 U.S. at 832-33. The Supreme Court has defined "a continuing course of conduct" as a crime "committed over a period of time, like kidnapping, harboring a fugitive, or failing to provide support for a minor."  *Id*.

The pursuit on which Petitioner lead Officer Shockley clearly involved a continuing course of conduct.  The crime began when Petitioner left with Officer Shockley's ticket book and refused to pull over, in spite of Officer Shockley's lights, siren, and loud speaker.  The crime of "evading" did not end until Petitioner was forcefully removed from her vehicle in front of her child's school.  Any "point violations" committed along the way were merely individual components of the continuous pursuit, evasion, and wantonness, for the purposes of § 2800.2(a) and § 2800.2(b).  As it involved a clearly

continuing course of conduct, a unanimity instruction was not required prior to a conviction under § 2800.2(a).

Likewise, the child endangerment charge under § 273a(b) of the California Penal Code, involved a continuing course of conduct. California courts have determined that child endangerment can involve a continuing course of conduct that does not require a jury instruction, and this Court sees no due process violation in this determination. *See, e.g. People v. Vargas*, 204 Cal.App.3d 1455, 1460-62 (1988). The Supreme Court has acknowledged that kidnapping involves a continuing course of conduct. Petitioner's conduct, as proscribed by § 273a(b) of the Penal Code, likewise fits the Supreme Court definition of "continuing course of conduct" as a crime "committed over a period of time." *Richardson*, 526 U.S. at 832-33. Petitioner placed her child in danger when she wantonly fled from Officer Shockley. This danger did not subside until her vehicle stopped in front of her child's school. As a result, a unanimity instruction was not required prior to a conviction under § 273a(b) of the California Penal Code.

Similarly, the charge under California Penal Code § 148(a)(1) did not require a unanimity instruction. Petitioner's willful resistance of Officer Shockley's arrest involved a continuing course of conduct. Contrary to Petitioner's assertions, Petitioner did not have three separate interactions with Officer Shockley, one of which possibly constituted resisting arrest. Petitioner's willful resistance began when she drove away from Officer Shockley's traffic stop with his ticket book. The resistance continued as she fled, failing to heed his lights, siren, and loudspeaker, and did not end until she was physically removed from her vehicle. The events encompassed by this pursuit were closely enough connected in time to constitute a continuing course of conduct. Officer Shockley never terminated his pursuit, only to renew it later, allowing for potentially superseding second and third points of willful resistance. Petitioner's resistance was constant, and "committed over a period of time" and thus constituted a continuing course of conduct. *Richardson*, 526 U.S. at 832-33. As a result, a unanimity instruction was not required prior to a finding of guilt under California Penal Code § 148(a)(1).

Therefore, it is RECOMMENDED that Petitioner's claims in these regards be DENIED.

1

2   **D.  The Exclusion of Evidence Showing Officer Shockley Had Used Excessive Force on Another**
    **Prior Occasion Did Not Deprive Petitioner of Her Right to Present Relevant Evidence**

3

4          Petitioner argues that a defendant has a constitutional right to present all relevant evidence of a

5   significant probative value.  *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("This right is a fundamental

6   element of due process of the law.").  Petitioner contends that she was denied this right.

7          According to Petitioner, the defense offered video tape evidence that Officer Shockley exhibited

8   prior violent behavior in an encounter with another female arrestee.  The trial court excluded this

9   evidence under § 352 of the California Evidence Code, which allows exclusion of  minimally relevant

10  evidence where its probative value is less than other concerns such as time.  The trial court stated that

11  the evidence was "certainly relevant to the [Penal Code} 148 issue" but excluded the evidence because

12  it "would provoke a diverting mini-trial of some considerable time."  (Lodgment 1 at 342-46).

13         Petitioner argues that the videotape illustrating the "officer's proclivity for excessive violence"

14  was brief, requiring only ten minutes of a witness' time, and was the only evidence the defense had of

15  such conduct.  Petitioner argues that since the time concerns were minor when weighed against

16  Petitioner's right to put on significant evidence, this constituted constitutional error.

17         Petitioner further argues that she was prejudiced by this exclusion.  At trial, Petitioner presented

18  a defense theory that she was not evading arrest, she was merely looking out for her, and her child's

19  safety.  Petitioner contends that she did not pull over and stop because she was troubled by Officer

20  Shockley's lack of self-control and excercise of  "excessive force."  Petitioner claims that the offered

21  evidence corroborated this defense theory, and the denial of the evidence denied her Due Process of

22  Law.

23

24         Respondent counters that even if relevant, evidence may be excluded if its probative value is

25  substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

26  jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative

27  evidence.  *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).  Respondent argues that decisions of the trial

28  judge receive much deference as the judge "may exclude or limit evidence to prevent excessive

28

consumption of time, undue prejudice, confusion of the issues, or misleading the jury...The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate." *Menendez v. Terhune,*, 422 F.3d 1012, 1033 (9th Cir. 2005) (*citing United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Respondent contends that there were several percipient witnesses that testified as to Officer Shockley's allegedly excessive conduct on the day in question.  Due to this readily available and pertinent information, videotape evidence of an entirely separate incident with entirely separate factual predicates would prove unnecessarily cumulative.  Respondent argues that the issues raised by this attempt at introducing evidence would necessitate a mini-trial, taking a considerable amount of time.  According to Respondent, the waste of time engendered by the introduction of such cumulative evidence after a delaying mini-trial would outweigh the limited probative value of the evidence. Thus, Respondent argues that the trial judge acted well within his discretion in excluding the evidence and did not engage in a ruling that was arbitrary or disproportionate.

Petitioner has a right to present relevant evidence.  Yet Petitioner does not have a constitutional right to present *all* relevant evidence.  Relevant evidence may still be excluded if considerations of undue delay, waste of time, or needless presentation of cumulative evidence so dictate.  *Egelhoff*, 518 U.S. at 42

Here, the trial judge did not act arbitrarily or disproportionately in excluding the evidence of Officer Shockley's prior violent encounter with another female arrestee.  Numerous witnesses testified at trial to Officer Shockley's conduct during his various encounters with Petitioner during the ongoing pursuit.  This testimony specifically evidenced Officer Shockley's conduct.  Officer Shockley's encounter with another female arrestee occurred on a separate day and following different factual precursors (including arrestee's drunken, persistent, physical resistance to a blood sample during which she kicked two police officers).  Therefore, it was of limited probative value when compared with the testimony already presented.  Thus, the trial judge reasonably determined that time considerations and the cumulative nature of the evidence outweighed its somewhat limited probative value.  Pursuant to *Egelhoff's* holding, the evidence was reasonably excluded.

Therefore, it is RECOMMENDED that Petitioner claim in this regard be DENIED.

**V.**

**CONCLUSION AND RECOMMENDATION**

After a review of the record in this matter, the undersigned Magistrate Judge RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice.

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636 (b)(1).

**IT IS ORDERED** that no later than March 15, 2007, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than March 29, 2007.The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Y1st*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 22, 2007

Hon. Leo S. Papas
U.S. Magistrate Judge